IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LACIE STOUDEMIRE, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 2:16-CV-756-SMD |
| | ) |
| OPP HEALTH & | ) |
| REHABILITATION, LLC | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This is an employment discrimination case where six former employees of Opp Health & Rehabilitation ("OHR") were terminated for allegedly abusing a resident at the facility. (Doc. 48) at 1; (Doc. 92) at 1. Plaintiffs argue their termination was racially motivated and, therefore, they assert claims pursuant to Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §2000e, *et seq.*, and 42 U.S.C. § 1981. (Doc. 48) at 6-7. Defendant has moved for summary judgment on Plaintiffs' claims, arguing that Plaintiffs have not demonstrated a prima facie case of discrimination and that OHR had legitimate, non-discriminatory reasons for terminating Plaintiffs. (Doc. 92) at 29; 33. For the reasons below, the undersigned concludes that Defendant's Motion for Summary Judgment (Doc. 91) should be granted.

## II.  STATEMENT OF FACTS[1]

Plaintiffs are six African-American women who were employed by OHR.  (Doc. 110) at 1-2; (Doc. 92) at 3-4.  Plaintiff Beverly Berry ("Berry") started working at OHR in 1998 as a Certified Nursing Assistant ("CNA").  (Doc. 110) at 2-3; (Doc. 92) at 4-5.  Plaintiff Kimberly Hill ("Hill") started working at OHR in 1996 as a CNA.  (Doc. 110) at 2-3; (Doc. 92) at 5.  Plaintiff Lessie Lott ("Lott") started working at OHR in 1999 as a CNA.  (Doc. 110) at 2-3; (Doc. 92) at 5.  Plaintiff Analyna Marshall ("Marshall") started working at OHR in 1994 as a Housekeeping Assistant.  (Doc. 110) at 2-3; (Doc. 92) at 6.  Plaintiff Barbara Tyson ("Tyson") started working at OHR in 2004 as a CNA.  (Doc. 110) at 2-3; (Doc. 92) at 6.  Plaintiff Lacie Stoudemire ("Stoudemire") started working at OHR in 1994 as a nursing assistant.  (Doc. 92) at 6.  Stoudemire was promoted to be a Licensed Practical Nurse ("LPN") in 1998.  *Id.* at 6-7.

While employed at OHR, Plaintiffs were provided with an employee handbook. (Doc. 110) at 3; (Doc. 92) at 7.  The employee handbook outlines disciplinary procedures employees face, to include termination, if they violate OHR policies against resident abuse.  (Doc. 92) at 7; (Doc. 102-2) at 21.  The OHR abuse policy (Doc. 107-1) defines verbal abuse as "the use of oral, written, or gestured language that willfully includes disparaging and derogatory terms to residents or their families, or within their hearing

---

[1] In making its determination on summary judgment, the Court must view all evidence and any factual inferences in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  When the evidence is in conflict, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

distance regardless of their age, ability to comprehend, or disability." *Id.* at 2. The OHR abuse policy defines mental abuse as "humiliation, harassment, threats of punishment or deprivation." *Id.* at 3. Employees receive bi-yearly training on residence abuse. (Doc. 92) at 12.

On February 22, 2016, a resident of OHR, J.G., made a complaint to OHR, accusing Plaintiffs of verbal and mental abuse. (Doc. 110) at 5-7; (Doc. 92) at 20-21. J.G. is a 63-year-old African-American male with multiple health conditions, including an amputated left leg and a missing eye. (Doc. 92) at 7-8. Specifically, J.G. claimed that Plaintiffs accused him, on multiple occasions, of causing Stoudemire's daughter, Shalonda Lawrence ("Lawrence") to suffer a miscarriage and lose her baby. *Id.* at 14-20. Plaintiffs' accusations stemmed from an incident that occurred sometime during the week of February 14, 2016, when Lawrence assisted Tyson with lifting J.G. from his bed to his wheelchair. *Id.* at 14. A few days later, Lawrence suffered a miscarriage. *Id.* There is no evidence in the record regarding whether lifting J.G. actually caused Lawrence's miscarriage. *Id.*

J.G. testified that, after Tyson learned of Lawrence's miscarriage on February 21, 2016, she came into his room "and said you know you made [Lawrence] to lose her baby, didn't you. . . ." (Doc. 100-1) at 8-9. After denying he made Lawrence lose her baby, J.G. testified that Tyson was "yelling at the top of her voice" and said "[y]es, you did make [Lawrence] lose her baby." *Id.* J.G. said the accusation "really hurt [him]." *Id.*

3

Stoudemire went to speak to J.G. later that day when another CNA told her J.G. was crying. (Doc. 93-1) at 37-38. Stoudemire testified that J.G. "look[ed] kind of sad" and told her that Tyson's comments "hurt [him] in [his] heart." *Id.* at 39-40. Stoudemire did not report Tyson's or J.G.'s comments to OHR management or complete an incident report as required by OHR policy. *Id.* at 39.

Hill and Berry accused J.G. of causing Lawrence's miscarriage the next day, on February 22, 2016, when they were taking him to the shower. (Doc. 93-3) at 23-24; (Doc. 93-5) at 28-29. Hill testified that she told J.G. that "you might not should have asked [Lawrence] to help you get up the other day." (Doc. 93-3) at 24. Marshall testified that she heard Hill tell J.G. that "you the reason [Lawrence] lost her baby." (Doc. 93-5) at 29. J.G. also testified that he heard Lott and Marshall talking in the hallway saying, "you know you lost—you made [Lawrence] lose her baby" and that he was upset by their comments. (Doc. 100-1) at 16-18.

On February 22, 2016, J.G. complained to another CNA regarding the comments made to him by Plaintiffs. (Doc. 92) at 20. The CNA reported J.G.'s complaint to OHR management that same day. *Id.* Plaintiffs were immediately suspended pending an investigation into J.G.'s accusation. (Doc. 110) at 4-5; (Doc. 92) at 21-22. During the investigation, each Plaintiff provided written and oral statements which generally corroborated J.G.'s description of events. (Doc. 92) at 22-25. After conducting their investigation, OHR concluded Plaintiffs engaged in verbal and mental abuse of J.G. and,

therefore, terminated their employment. (Doc. 110) at 4-5; (Doc. 92) at 25.

### III. STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, a reviewing court shall grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court explains that '[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986). When the non-moving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to "make a showing sufficient to establish the existence of an element essential to [its] case." *Id.* at 322. The legal elements of the claim dictate which facts are material and which are irrelevant. *Anderson*, 477 U.S. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the case under the governing law. *Id.*

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the non-movant. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *Patton v. Triad Guar. Ins. Corp.*, 277 F.3d 1294, 1296 (11th Cir. 2002). Likewise, the reviewing court must draw all justifiable inferences from the evidence in the nonmoving party's favor. *Anderson,* 477 U.S. at 255.

However, the Court is bound only to draw those inferences that are reasonable.

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Matsushita*, 475 U.S. at 587). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted); *see also Matsushita*, 475 U.S. at 586 ("[O]nce the moving party has met its burden under Rule 56(a), the nonmoving party must do more than simply show there is some metaphysical doubt as to the material facts").

Likewise, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam). Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

## IV. DISCUSSION

Plaintiffs bring their race discrimination claims pursuant to Title VII and 42 U.S.C. § 1981. While separate claims, the Eleventh Circuit requires the same proof and the same analytical framework to determine the validity of both claims. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) (stating that Title VII and § 1981 "have the same requirements of proof and use the same . . . analytical framework.").

Therefore, the undersigned analyzes Plaintiffs' Title VII and § 1981 claims together.

**A. Race Discrimination**

To establish a race discrimination claim under Title VII or § 1981, a plaintiff must either: 1) present direct evidence of discriminatory intent; 2) apply the *McDonnell Douglas* three-step circumstantial evidence test; or 3) present statistical proof. *See Boone v. Rumsfeld*, 172 F. App'x 268, 270-71 (11th Cir. 2006); *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Since Plaintiffs have not presented direct evidence[2] or statistical proof of discrimination, the undersigned proceeds under the *McDonnell Douglas* burden-shifting framework.

Under the *McDonnell Douglas* framework, a plaintiff must carry the initial burden of establishing a prima facie case of discrimination. *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1221 (11th Cir. 2019) (citing *McDonnell Douglas*, 411 U.S. at 802-04). If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the action. *Id.* Finally, should the defendant carry its burden, the plaintiff must then demonstrate that the defendant's proffered reason for the action was merely a pretext for unlawful discrimination. *Id.*

To establish a prima facie case of race discrimination, a plaintiff must establish

---

[2] "Direct evidence is 'evidence, that, if believed, proves [the] existence of [discriminatory intent] without inference or presumption.'" *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 921 (11th Cir. 2018) (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004)). "'[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of' some impermissible factor constitute direct evidence of discrimination." *Id.* at 922 (quoting *Wilson*, 376 F.3d at 1086).

that: 1) she belongs to a protected class; 2) she was subjected to an adverse employment action; 3) her employer treated similarly-situated employees outside her class more favorably; and 4) she was qualified to perform the job in question. *See Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1310 (11th Cir. 1998) *modified on other grounds* (citing *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) *modified on other grounds*); *Jones v. Gerwins*, 874 F.2d 1534, 1540 (11th Cir. 1989). Defendant does not dispute that Plaintiffs belong to a protected class or that they were subjected to an adverse employment action. (Doc. 92) at 31-34. Accordingly, the undersigned presumes for the purposes of summary judgment that those elements have been met and turns to determine whether Plaintiffs have established the third element of the prima facie case—i.e. whether Defendant treated a similarly-situated employee outside of Plaintiffs' protected class more favorably.

**B. Disparate Treatment**

In the present case, Plaintiffs were all discharged because OHR determined that they violated OHR's resident abuse policy. The fact that Plaintiffs now dispute they violated the policy is irrelevant.

> No plaintiff can make out a prima facie case by showing just that she belongs to a protected class and that she did not violate her employer's work rule. The plaintiff must also point to someone similarly situated (but outside the protected class) who disputed a violation of the rule and who was, in fact, treated better.

*Bessemer,* 137 F.3d at 1311 n.6; *see also Jones*, 874 F.2d at 1540 ("For purposes of Title

VII analysis, it is thus of no consequence that [the plaintiff] now disputes the charges."). "Disparate treatment exists when similarly situated workers are treated differently even though they have committed similar acts." *Osram Sylvania, Inc. v. Teamsters Local Union* 528, 87 F.3d 1261, 1265 (11th Cir. 1996). The plaintiff must demonstrate that she and her proffered comparators were "similarly situated in all material respects." *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1226 (11th Cir. 2019).

What constitutes a valid comparator must be determined on a case-by-case basis, in the context of individual circumstances. *Id.* at 1227. However, a valid comparator will: 1) have engaged in the same basic misconduct as the plaintiff; 2) have been subject to the same employment policy as the plaintiff; 3) ordinarily have been under the jurisdiction of the same supervisor as the plaintiff; and 4) share the plaintiff's employment or disciplinary history. *Id.* at 1227-28. "The most important factors in a comparator analysis in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed." *Thomas v. Dep't of Corr. for Ga.*, 377 F. App'x 873, 880 (11th Cir. 2010) (quoting *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1281 (11th Cir. 2008)). Comparisons of the severity of different types of workplace misconduct and how best to deal with them are the sort of judgments about which courts must defer to employers. *Flowers v. Troup Cty., Ga., Sch. Dist.*, 803 F.3d 1327, 1341 (11th Cir. 2015). "Federal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions.'" *Chapman v. A.I. Transp.*, 229 F.3d 1012,

1030 (11th Cir. 2000).

"A plaintiff and her comparators must be sufficiently similar, in an objective sense, that they 'cannot reasonably be distinguished.'" *Id.* at 1228 (quoting *Young v. United Parcel Svs., Inc.*, 135 S. Ct. 1338, 1355 (2015)). "Employees are not 'similarly situated' if management is aware of one's improper conduct, but not aware of the others' conduct." *Amos v. Tyson Foods, Inc.*, 153 F. App'x 637, 647 (11th Cir. 2005); *Gerwens*, 874 F.2d at 1542 (for his prima facie case, the plaintiff must show that his comparators' "known violations were consciously overlooked"); *Bogle v. Orange Cty. Bd. of Cty. Comm'rs*, 162 F.3d 653, 658-59 (11th Cir. 1998) (an employee who may have broken a rule but was not caught was not similarly situated to one who had been caught).

**C. Potential Comparators**

Here, Plaintiffs argue that white employees "routinely" receive reprimands or suspensions instead of termination like Plaintiffs. (Doc. 110) at 16. In support of this argument, Plaintiffs proffer the following comparators: 1) an unnamed employee who allegedly allowed a patient to fall out of bed but was never disciplined; 2) Janet Jeffcoat; a white LPN who allegedly was physically abusive with a resident but was never disciplined; 3) Diane Sansom, a white CNA who allegedly was verbally abusive to residents but was never disciplined; and 4) Renee Meeks, a white CNA who allegedly was verbally abusive to residents but was never disciplined. For the following reasons, the undersigned concludes that none of these individuals are similarly situated to

10

Plaintiffs.

1. *The unnamed employee.*

Lott testified that her brother, Mr. Daniels, who was a resident a OHR, fell out of bed but no disciplinary action was taken. (Doc. 110) at 17; (Doc. 93-4) at 30. However, Plaintiffs offered no evidence which showed that the patient fell out of bed due to abuse, which employee was allegedly involved, or if the incident was ever reported to OHR management. Accordingly, the undersigned finds that this employee is not similarly situated to Plaintiffs.

2. *Janet Jeffcoat*

Tyson testified that she heard about a white OHR employee, Janet Jeffcoat, who abused a resident but received no discipline. (Doc. 110) at 17; (Doc. 94-1) at 16. However, the alleged abuse by Jeffcoat was physical, not mental or verbal like the abuse against J.G., and Tyson's claim is not based on personal knowledge. Physical conduct cannot be considered nearly identical to non-physical conduct. *See Bell v. Crowne Mgmt., LLC*, 844 F. Supp. 2d 1222, 1229 (S.D. Ala. 2012). Additionally, at the time of the alleged incident, Jeffcoat was supervised by a different administrator than Plaintiffs. "[D]isciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis." *Thomas*, 377 F. App'x at 880 (quoting *Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989)). Accordingly, the undersigned finds that this employee is not similarly situated to Plaintiffs.

*3. Diane Sansom*

Tyson also testified about a white CNA, Diane Sansom, who "hollers" and "screams" at residents. (Doc. 110) at 18; (Doc. 94-1) at 19-20. However, yelling at a resident is not "the same basic misconduct" as repeatedly accusing a resident of causing the death of a baby. Even if it was considered similar conduct, Plaintiffs provide no evidence the incident was reported to OHR management. Additionally, Plaintiffs offer no evidence of Sansom's employment or disciplinary history, so the undersigned cannot conclude that she and Plaintiffs were "similarly situated in all material respects." Accordingly, the undersigned finds that this employee is not similarly situated to Plaintiffs.

*4. Renee Meeks*

Marshall testified that she heard a white CNA, Renee Meeks, "hollering" at a resident to "shut up and be quiet." (Doc. 110) at 18; (Doc. 93-5) at 5. However, Plaintiffs fail to demonstrate that yelling at a resident constitutes "the same basic misconduct" as Plaintiffs allegedly engaged in. Plaintiffs also provide no evidence the incident was reported to OHR management. Further, Plaintiffs offer no evidence of Meek's employment or disciplinary history, so it cannot be shown that she and Plaintiffs were "similarly situated in all material respects." Accordingly, the undersigned finds that this employee is not similarly situated to Plaintiffs.

*5. Other Potential Comparators*

Plaintiffs proffer other examples of white employees mistreating residents, but Plaintiffs' examples are neither based on personal knowledge nor are they accompanied by evidence as to what, if any, disciplinary action was taken against those employees. Such testimony is insufficient as a matter of law to establish a comparator for purposes of analyzing a retaliation claim. *See Bogle*, 162 F.3d at 658-59 (rejecting plaintiff's "unverifiable, anecdotal testimony" about alleged comparators where "witnesses who testified regarding these other incidents had no personal knowledge"); *Pritchard v. So. Co. Servs.*, 92 F.3d 1130, 1135 (11th Cir. 1996) (rejecting plaintiff's testimony "based on the statements of unknown coworkers"). "[U]nsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987).

Having identified all of Plaintiffs' potential comparators and having found them insufficiently similar to Plaintiffs for purposes of establishing a prima facie case of race discrimination, the undersigned concludes that Plaintiffs have failed to meet their burden of establishing a prima facie case of discrimination under *McDonnell Douglas*.

**D. Other Evidence of Discrimination**

Although the undersigned concludes that Plaintiffs have failed to establish a prima facie case of discrimination under the *McDonnell Douglas* framework, this is not necessarily fatal to their claims. "[E]stablishing the elements of the *McDonnell Douglas*

framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). "Rather, the plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id.* If a plaintiff fails to show the existence of a similarly-situated employee, summary judgment is only appropriate where no other evidence of discrimination is present. *Holifield*, 115 F.3d at 1562.

Here, Plaintiffs have proffered no evidence of racial animus by OHR officials other than the termination of their employment. Plaintiffs rely solely on their firing as circumstantial evidence of racial discrimination. However, such evidence is insufficient to create a triable issue of fact. *See Coar v. Pemco Aeroplex, Inc.*, 372 F. App'x 1, 4 (11th Cir. 2010) (finding employee's termination, by itself, insufficient circumstantial evidence to imbue employer's decision-making process with the requisite discriminatory animus); *see also Beal v. Convergys Corp.*, 489 F. App'x 421, 423 (11th Cir. 2012); *Cannon v. Dyncorp*, 378 F. Supp. 2d 1332, 1344 (M.D. Ala. 2004). Accordingly, the undersigned concludes that Plaintiffs have not presented sufficient other evidence of discriminatory intent by Defendant in order to survive summary judgment.

## V.  CONCLUSION

For the reasons stated above, Defendant's Motion for Summary judgment (Doc. 91) is GRANTED and Plaintiffs' claims are DISMISSED in their entirety WITH PREJUDICE.  A separate judgment shall issue.

Done this 5th day of August, 2019.

/s/ Stephen M. Doyle
UNITED STATES MAGISTRATE JUDGE